The following constitutes
the order of the court. Signed June 24, 2013

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    Case No. 11-41988 MEH
JAMES W. MOORE,                          Chapter 7

                    Debtor/
_____

DECISION AFTER TRIAL

    James W. Moore ("Debtor") filed a motion to avoid the judgment lien against his residence located in Oakland, California (the "Property"). The holders of the judgment lien, Paul Zinchik and Leonid Zinchik, Individually and as Trustees of the Zinchik Family Trust (the "Zinchiks"), opposed the Debtors' valuation of the Property. A trial was held on May 29, 2013 to determine the Property value for the purposes of Debtors' motion. The court has subject matter jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157

(b)(2)(K). This order constitutes the court's findings and conclusions pursuant to FRBP 7052.

For the reasons stated below, I find that the Property valuation is $845,000. Based on this finding, Debtor's request to avoid the judgment lien of the Zinchiks is partially granted.

Determination of Value

At trial, Debtor sought to establish the Property's value at $692,000, less costs of repair. In contrast, the Zinchiks' sought to establish a Property value of $900,000.

*Market Value*:

The Property is located within the Rockridge area of Oakland, California. Extensive testimony was presented at trial on the neighborhood's impact upon valuation, in particular the appropriate comparable sales to consider. The court is persuaded that the Property's value is increased by its location in a quiet residential area, near a thriving business district and with desirable schools. Thus, the comparable sales the court focuses on are those in the Rockridge area.

A total of seven sales were identified by the appraisers within the Rockridge area. Their sale prices ranged from $690,000 to $1,150,000, although five of the sales fell within a narrower range of $822,961 to $882,600. The house that sold for the lowest price

2

is substantially different from the Property because it is located on a busy street and smaller. Similarly, the highest sale price is for a recently remodeled home in superior condition with an extra half bath. It is also substantially different from the Property. The remaining five sales are for smaller homes that are in a better condition or on a busier street. The court finds the two best comparable sales are those located on the same street as the Property. One of these properties sold for $844,000; it is in a slightly superior condition but approximately 600 square feet smaller.[1] The second property sold for $839,000; it is closer in condition but approximately 500 square feet smaller. While the comparable sales are in slightly better condition, their condition was determined based upon descriptions provided in the MLS listing, which is a marketing tool rather than an objective analysis. The court finds additional adjustments to these sale prices are required based on the Property's larger size, and their sale closings approximately four months prior to the petition date in a rising real estate market. Accordingly, the court finds the Property's market value to be $845,000, as of the petition date.

---

[1] The house on the Property has a total square footage of approximately 2,000 square feet. As reflected in the appraisals, adjustments are appropriate for differences in square footage—particularly when the difference is approximately a quarter of the total house size.

3

*Repairs*:

Debtor testified that numerous repairs are required to the Property and that the value of the Property should be reduced on this basis. The noted repairs are as follows:

- Windows and Fireplace: Two of the repairs, window replacement and work on the hearth and firebox, are home upgrades begun some time ago but not fully completed. While completion of these projects may increase the value, neither item is a required repair and there are no visual deficiencies.
- Roof Replacement: Debtor stated in the list of repairs he prepared that the roof needs replacing because it is "unserviceable and in a state of failure." However, neither appraisal noted any visible damage to the roof or damage from leaks. Further, Debtor did not testify as to any current problems with the roof.
- Electrical System: Debtor testified that the electrical wiring in the house needed to be repaired and restored based on the prior owner's failure to complete connections at the main junction box. But Debtor purchased the Property with the existing electrical issues in 1999 and has not fixed it in the intervening 13 years.

4

- Lateral Sewer Line: Debtor asserted that the sewer line running laterally from the house to the main line needs to be replaced. The line is older and impacted by tree roots; as a result, Debtor needs to have it rooted out about every two years.

These items are long-standing home improvement issues, or repairs normally encountered by homeowners. In determining the market value, the court accepted the determination of both appraisers that the home is in average condition, meaning that some repairs are needed. On the basis of the evidence provided, the court does not find that an additional adjustment to value is required.

Impairment of Exemption

Bankruptcy Code § 522(f)(2)(A) provides that:

> [A] lien shall be considered to impair an exemption to the extent that the sum of--
> (i)    the lien;
> (ii)   all other liens on the property; and
> (iii)  the amount of the exemption that the debtor could claim if there were no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

The court previously determined that the amount due on the first lien against the Property is $381,519.83 and on the second lien is $277,608.49; totaling $659,128.32. Debtor claimed a $100,000 homestead exemption.

5

Applying this formula to the facts of this case, the court determines that the Zinchik's lien partly impairs Debtors' exemption:

| | | |
|---|---|---|
| Sum of: | the lien | $ 739,697.00 |
| | all other liens | $ 381,519.83 |
| | | $ 277,608.49 |
| | the exemption | $ 100,000.00 |
| | | $1,498,825.32 |

The extent to which the liens impair Debtors' exemption is $1,498,825.32 minus $845,000, or $653,825.32 and that amount may be avoided.

The amount of impairment does not exceed the amount of the Zichik's lien sought to be avoided. Thus, the Zinchik's lien of $739,697.00 may be avoided only to the extent of $653,825.32 because that is the extent of the impairment of the exemption by the Zinchik's lien. The Zinchik's retain a lien of $85,871.68 ($739,697.00 - $653,825.32).

Conclusion

Applying a value of $845,000 for the Property, the Zinchik's judgment lien is avoided in the amount of $653,825.32. Thus, the Zinchik's retain a lien in the amount of $85,871.68.

Contemporaneous with the issuance of this decision, the court will issue its order avoiding the lien in part.

**END OF DECISION**

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | David M. Sternberg |
| 3 | David M. Sternberg and Assoc. |
| | 540 Lennon Ln. |
| 4 | Walnut Creek, CA 94598 |
| 5 | ERIC D. MILLER |
| | MILLERHAUSER LAW GROUP, LLP |
| 6 | 4 Embarcadero Center, 39th Floor |
| 7 | San Francisco, California 94111 |